## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2017, 10:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mindy Andrew,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 16, 2017

Court of Appeals Case No.
49A04-1610-CR-2399

Appeal from the Marion Superior Court

The Honorable Marshelle Dawkins-Broadwell, Magistrate

Trial Court Cause No.
49G17-1603-CM-9442

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Mindy L. Andrew (Andrew), appeals the trial court's restitution order following her conviction for criminal mischief, a Class A misdemeanor, Ind. Code § 35-43-1-2(a)(1).

We vacate the restitution order.

# ISSUE

Andrew raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by ordering Andrew to pay restitution as a condition of probation.

# FACTS AND PROCEDURAL HISTORY

In February of 2016, Andrew was sporadically living with Douglas Polley (Polley), at his home in Indianapolis, Marion County, Indiana. During the early morning hours of February 21, 2016, Andrew was at Polley's house, and the two became involved in a verbal argument. The verbal disagreement escalated to a physical confrontation and the destruction of property.

When the situation de-escalated, Andrew left and Polley called 9-1-1. Officer John Hertig (Officer Hertig) of the Indianapolis Metropolitan Police Department responded. When Officer Hertig arrived, he noted that Polley had several minor cuts. According to Polley, Andrew had pushed him into a glass coffee table, which shattered; thrown his cell phone into the aquarium; and had "trashed" his house. (Tr. Vol. II, p. 18). Officer Hertig observed that "[t]here

were items throw[n] on the floor, several broken items. There was an organ right beside the door that was smashed. Multiple TVs that were smashed. And figurines and such." (Tr. Vol. II, p. 30). Polley also informed Officer Hertig that he was unable to locate his nine-millimeter handgun. Polley reported the matter to his insurance company, and it was calculated that the damages exceeded Polley's deductible of $1,240.

[6] On March 16, 2016, the State filed an Information, charging Andrew with Count I, domestic battery, a Class A misdemeanor, I.C. § 35-42-2-1.3(a); Count II, battery resulting in bodily injury, a Class A misdemeanor, I.C. § 35-42-2-1(d)(1); Count III, theft, a Class A misdemeanor, I.C. § 35-43-4-2(a); and Count IV, criminal mischief, a Class A misdemeanor, I.C. § 35-43-1-2(a)(1). On September 1, 2016, the trial court conducted a bench trial. Upon motion by the State, the trial court dismissed Count I, domestic battery. At the conclusion of the evidence, the trial court found Andrew not guilty of Counts II and III, battery resulting in bodily injury and theft. However, the trial court found Andrew guilty of Count IV, criminal mischief, and entered judgment accordingly. On September 26, 2016, the trial court held a sentencing hearing. The trial court imposed a 365-day sentence, entirely suspended to probation. The trial court also ordered Andrew to pay restitution to Polley in the amount of his deductible—$1,240.

[7] Andrew now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[8] Andrew claims that the trial court abused its discretion by ordering her to pay restitution to Polley as a condition of probation. Restitution orders are a matter of trial court discretion and are reviewed on appeal only for an abuse of such. *Bell v. State*, 59 N.E.3d 959, 962 (Ind. 2016). Pursuant to Indiana Code section 35-38-2-2.3(a)(6), as a condition of probation, a trial court may require a defendant to

> [m]ake restitution or reparation to the victim of the crime for damage or injury that was sustained by the victim. When restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance.

Here, Andrew asserts that the trial court's restitution order is unsupported by any evidence that she has the ability to pay $1,240 in restitution.

[9] "[W]hen setting restitution as a condition of probation, our trial courts are required to consider the defendant's ability to pay." *Bell*, 59 N.E.3d at 963. This is to ensure that indigent defendants are not imprisoned for a probation violation based on a defendant's inability to pay. *Id.* Indigent defendants are not *per se* precluded from paying restitution, so long as "the ability to pay is considered." *Id.* While there is "no particular procedure" that the trial court "must follow in determining the defendant's ability to pay, . . . some form of inquiry is required." *Id.* "The trial court may consider factors such 'as the defendant's financial information, health, and employment history.'" *Id.*

(quoting *Champlain v. State*, 717 N.E.2d 567, 570 (Ind. 1999)). If neither the defendant nor the State provides evidence as to the defendant's ability to pay, the trial court must "make the necessary inquiry to meet its statutory obligation." *Id.* at 964. Where a defendant claims that she is unable to pay restitution, she bears the burden of providing evidence regarding such an inability to pay. "A bald claim of indigency, without more, is insufficient to preserve this issue for appeal." *Id.* Once a defendant provides "information demonstrating an inability to pay, the burden properly shifts to the State to rebut the evidence of defendant's inability to pay." *Id.*

[10] In this case, during the sentencing hearing, Andrew's attorney briefly questioned Andrew regarding her ability to pay restitution. Andrew testified that she has never worked, has no source of income, and her family supports her. Andrew also has four children, who live with her father. Andrew stated that she had never worked as a result of a disability, which she described simply as "mental" and for which she sees "a therapist and psychiatrist" twice per month. (Tr. Vol. III, p. 13).[1] Andrew claimed that she had recently filed for disability benefits and that a hearing on the matter was scheduled for the following month. Thereafter, the trial court stated:

> With respect to the restitution, all of the items, in my view, . . .
> but for the gun, are fair game for restitution in this matter. . . .
> Polley[] testified extensively about all of the various knick-knacks
> and items in the home that were damaged. And with respect to

---

[1] We note that, during the bench trial, Andrew expressly denied having any physical disabilities.

the frames and planters and individual items, if you look at all of the photographs in this case, that were admitted, you can see all of these items that were damaged as part of the incident that took place. With respect to the gun, . . . Andrew was found not guilty as to that [C]ount [of theft]. I didn't find that she was guilty as to that [C]ount. However, [Polley's] total loss, according to, I believe, State's Exhibit One (1) for this hearing, is over three thousand dollars ($3,000.00 USD) even if you take the six forty-nine ($649.00 USD) off of that [for the gun], it's still more than his deductible. [Polley is] out of pocket the entire deductible amount, and his deductible was twelve forty ($1,240.00 USD). So, you've said that [Andrew] doesn't work, and that she's never worked, and she says that she's never worked because of her disability, but she's testified that she doesn't actually receive disability; she's applied for disability, and that she doesn't receive it. That means to me that she's not on disability, and she hasn't been determined to be disabled. I am going to order restitution. I am going to order restitution for the one thousand two hundred and forty dollars ($1,240.00 USD).

(Tr. Vol. III, pp. 19-20).

[11] Accordingly, the trial court's decision to order restitution was based on a determination that Andrew was capable of obtaining a source of income because she had not been declared disabled. While it is within the discretion of a trial court to discredit a witness, here, there was no evidence elicited to contradict Andrew's testimony—however tenuous—that she had never worked and could not work because of a mental condition, and that a disability determination was pending. The simple determination that Andrew had not yet established that she was entitled to social security benefits based on a diagnosed disability did not satisfy the trial court's statutory obligation to

inquire into Andrew's ability to pay prior to mandating restitution. Rather, it was incumbent upon the trial court to delve further into Andrew's financial and health situations. *See Kays v. State*, 963 N.E.2d 507, 510 (Ind. 2012) (noting no inquiry was made as to the defendant's education, work history, health, assets, or other financial information). While it was made clear that Andrew has never had employment in her thirty-five years of life and relies on support from her family, there was no inquiry into her expenses or living situation. Nor was there any questioning as to her educational background or experience or as to why her purported disability precludes her from seeking employment in any job. The trial court simply presumed that she could obtain employment to pay restitution but did not develop a record of such. *See Bell*, 59 N.E.3d at 966.

[12] We recognize that Polley sustained a significant loss as a result of Andrew, and we agree with the State that voluntary unemployment should not relieve a criminal defendant of restitution. However, when Andrew presented testimony that she had no income and could not work due to a disability, in the absence of questioning by the State, the trial court should have made further inquiry in order to ascertain Andrew's ability to pay before ordering restitution. The failure to do so was an abuse of discretion which requires us to vacate the restitution order.[2]

---

[2] In *Bell*, 59 N.E.3d at 966, our supreme court explained that in a situation where "the trial court fails to make any inquiry, and the defendant has also failed to provide any additional evidence as to the inability to pay," remand is the appropriate remedy. However, as in the present case, "where the defendant has presented evidence demonstrating an inability to pay, the trial court has made no further inquiry, and the

# CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion by ordering Andrew to pay restitution without ascertaining her ability to pay.

Vacated.

Najam, J. concurs

Bradford, J. concurs with separate opinion

---

State has not rebutted the defendant's testimony as to the inability to pay, we believe the most appropriate remedy is to vacate the restitution order." *Id.*

| | |
|---|---|
| Mindy Andrew, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | [Add Hand-down date] <br><br> Court of Appeals Case No. <br> 49A04-1610-CR-2399 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marshelle Dawkins-Broadwell, Magistrate <br><br> Trial Court Cause No. <br> 49G17-1603-CM-9442 |

**Bradford, Judge, concurring with opinion.**

[17] Given the Indiana Supreme Court's holding in *Bell v. State*, 59 N.E.3d 959 (Ind. 2016), I agree with the majority's conclusion that the restitution order entered by the trial court must be vacated. However, I write separately to highlight the fact that Indiana law provides an avenue for trial courts to order restitution in cases where the defendant does not have the ability to pay said restitution.

[18]     The imposition of a restitution order is a form of punishment and is as much a part of a criminal sentence as a fine or other penalty. *Wininger v. Purdue Univ.*, 666 N.E.2d 455, 457 (Ind. Ct. App. 1996). Furthermore, "'[t]he purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense.'" *Rich v. State*, 890 N.E.2d 44, 50 (Ind. Ct. App. 2008) (quoting *Carswell v. State*, 721 N.E.2d 1255, 1259 (Ind. Ct. App. 1999)).

[19]     "Restitution may be awarded as a condition of probation or as a part of a defendant's sentence wholly apart from probation." *Baker v. State*, 70 N.E.3d 388, 392 (Ind. Ct. App. 2017) (citing *Pearson v. State*, 883 N.E.2d 770, 772 (Ind. 2008)), *trans. denied*.

> When the trial court orders restitution as a condition of probation, the court is required to inquire into the defendant's ability to pay. *See* Ind. Code § 35-38-2-2.3(a)(6) ("[w]hen restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance"). Where restitution is ordered as part of an executed sentence, an inquiry into the defendant's ability to pay is not required. *Pearson*, at 773 (citing *Shaffer v. State*, 674 N.E.2d 1, 9 (Ind. Ct. App. 1996)).

*Id*.

[20]     A restitution order is a judgment lien that:
       (1) attaches to the property of the person subject to the order;
       (2) may be perfected;

(3) may be enforced to satisfy any payment that is delinquent under the restitution order by the person in whose favor the order is issued or the person's assignee; and

(4) expires;

in the same manner as a judgment lien created in a civil proceeding.

Ind. Code § 35-50-5-3(b). In cases where a restitution order stems from a criminal prosecution involving property damage,

> the court must base its restitution order upon a consideration of "property damages of the victim incurred as a result of the crime, based on the *actual* cost of repair (or replacement if repair is inappropriate)...." [Ind. Code § 35-50-5-3(a)(1)] (emphasis supplied). The statutory language implies that the restitution order must reflect the actual loss sustained by the victim, *Smith v. State*, 471 N.E.2d 1245, 1248 (Ind. Ct. App. 1984) *reh'g denied*, *trans. denied*, and the amount of actual loss is a factual matter which can be determined only upon presentation of evidence. *Id*. Thus, *the restitution order is the practical equivalent of a civil money judgment*, and for purposes of the restitution statute, [Ind. Code § 35-50-5-3], *it substitutes for the civil judgment which is normally the basis for a judgment lien*. Because the trial court must base its restitution order upon evidence of the crime victim's actual loss, the victim is not obliged to subsequently pursue an independent civil action for money damages to enforce the restitution order, when the sole purpose of such an action would be to establish the amount of its loss.

*Wininger*, 666 N.E.2d at 458 (first emphasis in original, second and third emphases added).

By ordering restitution as part of a defendant's sentence, rather than as part of the defendant's probation, the trial court eliminates the need for the court to determine that the defendant has the ability to pay the restitution order. It further elminiates the need for the victim of a crime to file the proceedings necessary for obtaining a civil judgment against the defendant. I believe that it would be prudent for a trial court to consider crafting a sentence in a manner that would make it as easy as possible for a victim of a crime to recover for the damages incurred as a result of crime committed against him.